IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IHFC PROPERTIES, LLC,               )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        1:10-cv-568
                                    )
APA MARKETING, INC., and            )
WHALEN FURNITURE                    )
MANUFACTURING, INC.,                )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

      This is a breach of contract action brought by IHFC
Properties, LLC ("IHFC"), against APA Marketing, Inc. ("APA"),
signatory to the contract, and Whalen Furniture Manufacturing,
Inc. ("Whalen"), which allegedly assumed APA's contract
liabilities. Whalen moves to dismiss the action for improper
venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or,
alternatively, to transfer the action pursuant to 28 U.S.C.
§§ 1406(a) and 1404(a) (Doc. 13), and IHFC moves to strike
Whalen's reply brief (Doc. 20). The United States Magistrate
Judge entered an Order and Recommendation in which he struck the
reply brief and recommended denial of the motion to dismiss
and/or transfer venue. (Doc. 24.) Before the court presently
is Whalen's appeal of the Magistrate Judge's Order striking its

reply brief and attachment and its objection to the Recommendation insofar as it urged denial of its motion to dismiss or transfer. (Doc. 26.) For the reasons that follow, the Magistrate Judge's Order not to consider IHFC's reply brief will be affirmed and Whalen's motion to dismiss and request to transfer venue will be denied.

## I.  BACKGROUND

In addition to the factual background set forth by the Magistrate Judge in his Order and Recommendation, the record, taken in a light most favorable to IHFC, reveals the following:

Plaintiff IHFC is a Delaware corporation that owns and operates a large showroom facility in High Point, North Carolina, branded as the International Home Furnishing Center ("Furniture Center"). IHFC leases portions of the Furniture Center to furniture manufacturers and vendors during the semi-annual International Home Furnishings Market ("Furniture Market"). (Doc. 18 at 1.) Defendant Whalen, incorporated under the laws of California, manufactures, markets, and sells furniture and decorative accessories across the United States from its corporate headquarters in San Diego, California. (Doc. 13-1 at 9.) Defendant APA is also a California corporation that, at least until 2008, was similarly engaged in the furniture trade. (Doc. 3 at 1-2.)

In the fall of 2006, IHFC leased a 15,421 square-foot showroom in its Furniture Center to APA (the "Lease"). The Lease term is five years, permits APA to participate in the biannual Furniture Markets in April and October, and obligates APA to pay a "base rental" of $14.50 per square foot. (Doc. 13-1 at 54.)

On July 10, 2008, nearly two years into the Lease, APA entered into an Asset Purchase Agreement (the "Purchase Agreement") with Whalen, by which Whalen agreed to purchase certain of APA's assets. (Doc. 3 at 2; Doc. 13-1 at 28.) At the time of the Purchase Agreement, APA had fallen behind in its rent due under the Lease for the October 2008 Furniture Market. (Doc. 18 at 2.) On September 26, 2008, Whalen paid the $74,645.58 in outstanding rent due under the Lease and occupied the showroom during the October 2008 Furniture Market. (Doc. 3 at 2-3; Doc. 18 at 3, 14.) Thereafter, Whalen paid IHFC $119,430.41 under the Lease for the April 2009 Furniture Market and occupied the showroom again. (Doc. 3 at 2-3; Doc. 18 at 4, 16.) After the April 2009 Furniture Market, however, neither APA nor Whalen made any further payment and vacated the showroom.

On June 22, 2010, IHFC filed this lawsuit against APA and Whalen in the General Court of Justice, Superior Court Division, in Guilford County, North Carolina. IHFC's three count verified

complaint alleges that APA, as the signatory to the Lease, and Whalen, which IHFC charges had assumed the lease, are liable for rent in arrears, interest, and attorney's fees (Count I) and future rent (Count II). (Doc. 3.) In addition, IHFC charges that Whalen's purchase of APA's operations constituted a mere continuation of the latter's business and/or represented a de facto merger between the two entities, and thus that Whalen is liable for rent due under the Lease, interest, and reasonable attorney's fees (Count III). (Id.) Whalen removed the case to this court on July 22, 2010, pursuant to 28 U.S.C. §§ 1441 and 1446.[1] Prior to filing an answer, Whalen moved to dismiss IHFC's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) on the grounds that this court lacked personal jurisdiction over it. (Doc. 13.) In the alternative, Whalen moved to transfer venue to the Southern District of California pursuant to 28 U.S.C. §§ 1406(a) or 1404(a), arguing, as to the former, that this court lacked jurisdiction and, as to the latter, that the Southern District of California would be a

---

[1] Only Whalen filed to remove this case to federal court. (Doc. 1.) Ordinarily, "'[a] petition [for removal] filed by less than all of the named defendants is defective if it fails to contain an explanation for the absence of co-defendants.'" Brodar v. McKinney, 378 F. Supp. 2d 634, 637 (M.D.N.C. 2005) (quoting N. Ill. Gas Co. v. Airco Indus. Gases, A Div. of Airco, Inc., 676 F.2d 270, 273 (7th Cir. 1982)). However, any such defect is waived if the plaintiff does not file a notice to remand within thirty days of the filing of the notice of removal. Id. Here, Whalen's notice of removal failed to explain whether APA consented to removal, but the record reveals that IHFC chose not to object to the apparent defect. Thus, the case is properly before the court.

more convenient forum. (Id.) IHFC countered that venue is proper in North Carolina because this court may exercise personal jurisdiction over Whalen. In addition, IHFC moved to strike Whalen's 22-page reply brief because it exceeded the 10-page limit permitted by Local Rule 7.3(d) and because Whalen did not limit its brief to a discussion of matters newly raised in IHFC's response brief as required by Local Rule 7.3(h). (Doc. 20.)

The Magistrate Judge concluded, first, that venue is proper in this district. Assessing venue under 28 U.S.C. § 1391(a), he determined that IHFC had made a prima facie showing that personal jurisdiction existed over Whalen based on evidence that Whalen assumed the Lease obligation under the Purchase Agreement. Specifically, the Magistrate Judge reasoned that the Purchase Agreement defined "assets" as "all assets and properties owned, used, or leased or subleased by [APA] in connection with [its business] (other than the Excluded Assets)" and the IHFC lease was not listed as an excluded asset. (Doc. 24 at 4 (quoting Doc. 13-1 at 13 (emphasis added)).) Thus, he concluded, IHFC had made a showing that specific personal jurisdiction could be exercised over Whalen because it purchased[2] the Lease.

---

[2] The Magistrate Judge referred to the Purchase Agreement "assigning" the Lease to Whalen. (Doc. 24 at 7.) An "assignment" is "[t]he

Second, the Magistrate Judge denied Whalen's alternate motion to transfer venue under 28 U.S.C. §§ 1406(a) and 1404(a), finding as to the former that venue was proper based on Whalen's purchase of the Lease, and as to the latter that access to evidence, avoidance of choice of law problems, and a local district's interest in having local disputes settled at home did not weigh strongly in Whalen's favor. The Magistrate Judge also granted IHFC's unopposed motion to strike Whalen's reply brief, concluding that it exceeded the 10-page limit provided by Local Rule 7.3(d). (Doc. 24 at 3.) In so doing, the Magistrate Judge refused to consider a 17-page attachment captioned "Whalen Furniture Mtg., Inc.'s Objections to the Affidavit of Thomas J. Loney [the "Loney Affidavit"] in Support of IHFC Properties, LLC's Response to its Alternative Motion to Dismiss or Change Venue" (Doc. 19-1) because it failed to comply with Local Rule 7.3(a).

Whalen objects to the Magistrate Judge's rulings on several grounds. First, it contends that the Magistrate Judge erred by striking the reply brief and failing to consider its attached objections to the Loney Affidavit. Second, it argues that the Magistrate Judge fundamentally misinterpreted the Purchase Agreement and failed to apply California law, which it contends

---

transfer of rights or property." <u>Black's Law Dictionary</u> 136 (9th ed. 2009

would have revealed that the parties did not intend the Lease to be a purchased asset. Finally, it asks the court in the alternative to transfer the action to the Southern District of California, arguing that the Magistrate Judge's "brief and conclusory" opinion did not contain a proper analysis of the factors relevant to a venue determination. (Doc. 26 at 13 n.12.)

IHFC contends that Whalen's objections are meritless. It argues that Whalen's reply brief and attachment were properly stricken because, together, they constituted "nearly 40 pages of argument" and because Whalen failed to object to IHFC's motion to strike. (Doc. 29 at 2.) Furthermore, IHFC contends that venue is proper because, when viewed in the light most favorable to the nonmoving party as required by Combs v. Bakker, 886 F.2d 673 (4th Cir. 1989), the Purchase Agreement makes at least a prima facie showing that Whalen purchased the Lease and, thus, would be subject to personal jurisdiction in North Carolina. IHFC also invites the court to find general or specific personal jurisdiction in North Carolina on the basis of Whalen's other purported contacts with the state. Finally, IHFC urges that venue should not be transferred for the convenience of the parties because many of the witnesses to be called are located, and the parties signed the Lease, in North Carolina.

The parties' arguments will be addressed in turn.

## II. ANALYSIS

### A. Motion to Strike

The Magistrate Judge struck Whalen's reply brief because it exceeded the page limitation imposed by Local Rule 7.3(d), and he refused to consider Whalen's attached 17 pages of objections to the Loney Affidavit. (Doc. 24 at 3.) Whalen asks this court to "reconsider" the Magistrate Judge's decision and contends that the failure to rule on the objections to the Loney Affidavit constitutes error. (Doc. 26 at 2, 6 n.5.) When a Magistrate Judge issues an order on a nondispositive question, such as a motion to strike, a district court's review is limited to whether the order was "'clearly erroneous' or 'contrary to law.'" Schwartz & Schwartz of Va., LLC v. Certain Underwriters at Lloyd's, London Who Subscribed to Policy Number NC959, 677 F. Supp. 2d 890, 893 (W.D. Va. 2009) (quoting Fed. R. Civ. P. 72(a)).

Here, the Magistrate Judge's decision to strike Whalen's reply brief was neither clearly erroneous nor contrary to law. This court's Local Rule 7.3(k) provides that the failure to respond to a motion "ordinarily" results in the motion being "granted without further notice," and Local Rule 7.3(d) expressly states that "reply briefs are limited to 10 pages." As an initial matter, therefore, Whalen's failure to respond to IHFC's motion to strike waived any objections it may have had.

See Local Rule 7.3(k).  Moreover, Whalen's argument fails on the merits.  As Whalen recognizes, its "reply brief, absent the attachment, exceeded the 10-page limit."  (Doc. 26 at 6 n.5.) While Whalen now asks the court to excuse its violations of the district's local rules, the rules exist "to foster civility in the practice of law before this Court, and to promote the just and prompt determination of all proceedings."  Local Rule 1.1. Neither goal is served by permitting Whalen to belatedly object to IHFC's motion to strike or to submit impermissibly lengthy materials without prior permission.

Whalen also argues that the Magistrate Judge erred by refusing to consider its objections to the Loney Affidavit which, Whalen contends, demonstrate that IHFC "could not have met its burden of showing specific jurisdiction over Whalen." (Doc. 26 at 7.)  In support of its position, Whalen contends that IHFC only moved to strike Whalen's 22-page reply brief, not the accompanying objections.  Whalen also argues that its objections complied with the spirit of Local Rule 7.3(a), which requires all motions to be set out in a separate pleading, because Whalen moved in at least two separate areas of its objections to strike portions of the affidavit.  The only reason it attached its objections to its reply brief, Whalen represents, was its counsel's inability to upload them to the court's electronic docket unless they were filed as an

9

attachment – a technical mistake that Whalen asks the court to overlook. (Doc. 26 at 6.) Finally, even if its objections are not considered, Whalen contends that the court should nevertheless disregard any portion of the affidavit that violates the evidentiary rules.

While it appears that the Magistrate Judge's decision not to consider the objections was not clearly erroneous or contrary to law, the ultimate issue is whether a finding of venue in this district rests on a pertinent but impermissible portion of the Loney Affidavit. For the reasons explained in the following sections, this court's review of the objections indicates that it does not. Thus, Whalen's appeal of the Magistrate Judge's ruling to strike the Loney Affidavit and not to consider the attached objections will be denied.

### B. Motion to Dismiss for Improper Venue

In ruling on Whalen's motion to dismiss for lack of venue and its alternate motions to transfer venue to the Southern District of California under 28 U.S.C. § 1406(a), the Magistrate Judge concluded that venue was proper in the Middle District of North Carolina under the general venue provisions of 18 U.S.C. § 1391. Therefore, he recommended against dismissing IHFC's complaint under Rule 12(b)(3) or transferring the action under section 1406(a). When a Magistrate Judge issues a recommended ruling on matters that are dispositive of a party's claim or

10

defense, the recommendation is subject to _de novo_ review. _Gardendance, Inc. v. Woodstock Copperworks, Ltd._, 230 F.R.D. 438, 447 (M.D.N.C. 2005); Fed. R. Civ. P. 72(b). Although the Magistrate Judge based his ruling on IHFC's prima facie showing that the court has specific personal jurisdiction over Whalen, the court's _de novo_ review demonstrates an independent basis for denying Whalen's motion.

The parties point to the general venue statute, 28 U.S.C. § 1391(a)(1),[3] which provides in relevant part that where federal subject matter jurisdiction is founded solely on diversity of citizenship, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." For purposes of the venue statute, a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." § 1391(c). Based on this, the Magistrate Judge found that Whalen was subject to personal jurisdiction in North Carolina so that it could be deemed to "reside" in the state.

Although section 1391 governs venue in most cases that are filed directly in federal court, it does not apply to actions

---

[3] During the pendency of Whalen's motion, the President signed into law the Federal Court Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, which amended particular provisions of the U.S. Code related to jurisdiction and venue, including section 1391. The amendments, however, apply only to actions commenced in state or federal court 30 days after December 7, 2011, _id._ § 205, 125 Stat. at 764-65, and thus are inapplicable to this case.

removed to federal courts, such as this one. _Polizzi v. Cowles Magazines, Inc._, 345 U.S. 663, 665 (1953) ("[O]n the question of venue, § 1391 has no application to this case because this is a removed action."). Instead, "[v]enue for a removed action is fixed . . . by the removal statute, 28 U.S.C. § 1441(a)." _Godfredson v. JBC Legal Grp., P.C._, 387 F. Supp. 2d 543, 555-56 (E.D.N.C. 2005); see also _Hollis v. Fla. State Univ._, 259 F.3d 1295, 1299 (11th Cir. 2001); _PT United Can Co. v. Crown Cork & Seal Co._, 138 F.3d 65, 73 (2d Cir. 1998); _Quick v. Coale, Cooley, Lietz, McInerny & Broadus, P.C._, 212 F.R.D. 299, 301 (M.D.N.C. 2002). By its terms, section 1441(a) permits removal only "to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C. § 1441(a); see also _Godfredson_, 387 F. Supp. 2d at 556 ("[Section] 1441(a) only allows one possible venue for removal."). This is true even if venue would not have been proper in the district "embracing" the state court where the action is pending under section 1391. _Three M Enters., Inc. v. Texas D.A.R. Enters., Inc._, 368 F. Supp. 2d 450, 455 (D. Md. 2005) (citing _Hollis_, 259 F.3d at 1300). This case was originally filed in the Guilford County Superior Court. Because Guilford County lies within the Middle District of North Carolina, venue is unquestionably proper in this district. _E.g._, _Quick_, 212 F.R.D. at 301.

12

Whalen's decision to contest venue under section 1391 is fatal to its motion to dismiss under Rule 12(b)(3) and its alternative motion to transfer under section 1406(a).[4] Numerous courts have held that a Rule 12(b)(3) motion to dismiss based on improper venue is unavailable where a case has been removed to the federal district embracing the state district where the action was pending. Polizzi, 345 U.S. at 665-66 (reversing the district court, which had granted defendant's motion to dismiss for improper venue, because venue in the case that had been removed from state court was proper in the district under section 1441(a)); Kerobo v. Sw. Clean Fuels, Corp., 285 F.3d 531, 536 (6th Cir. 2002) (holding the district court erred in granting defendant's motion to dismiss under Rule 12(b)(3) where venue was proper under section 1441(a)); PT United, 138 F.3d at 72 ("[A] party may challenge removal as itself improper, or as having been made to the wrong district court if the case was removed to a district court other than that 'embracing' the state court in which the action was brought, but one may not challenge venue in the district court as of right, according to that district court's venue rules, as if the case had originally been brought there."); Godfredson, 387 F. Supp. 2d at 556

---

[4] As noted infra, motions to transfer venue for the convenience of the parties and witnesses under section 1404(a) are not precluded in removed actions. See, e.g., Quick, 212 F.R.D. at 301. Thus, the reliance on section 1391 has no impact on Whalen's alternate motion to transfer for convenience under section 1404(a).

("Because § 1441(a) only allows one possible venue for removal, 'once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds.'" (quoting Hollis, 259 F.3d at 1299)). Many other courts have held that section 1406(a) is similarly unavailable for parties challenging venue in an action that has been removed from state court to the proper federal district under section 1441(a). Kotan v. Pizza Outlet, Inc., 400 F. Supp. 2d 44, 46 (D.D.C. 2005) ("[T]his Court is the proper venue under § 1441(a). . . . Thus, the [defendants'] objection under § 1406(a) to the propriety of venue in this district is not valid."); Three M Enters., 368 F. Supp. 2d at 455 n.4 ("[T]he fact that the removal statute establishes venue as a matter of law precludes Defendants' instant Motion to Dismiss or transfer the action based on improper venue."); see also Kerobo, 285 F.3d at 538 ("Section 1406(a) applies only where venue is improper.").[5]

---

[5]  The Eleventh Circuit has noted in dicta that a defendant who has removed an action to federal court may have a basis for requesting a transfer pursuant to section 1406(a). See Hollis, 259 F.3d at 1300. The Hollis court's observation was based on Aguacate Consolidated Mines, Inc., of Costa Rica v. Deeprock, Inc., 566 F.2d 523, 524-25 (5th Cir. 1978), which held that a federal court ruling on a case properly removed under section 1441(a) but lacking personal jurisdiction could nevertheless transfer the case under section 1406(a) because the inability to serve process on a defendant was an obstacle to expeditiously adjudicating the case on its merits. Aguacate, therefore, stands for the proposition that where an action pending in state court is removed to the proper federal district under section 1441(a), the federal court can transfer the case to another district under 1406(a) if the federal court determines that it lacks personal jurisdiction over the defendant. The facts of Aguacate,

Thus, Whalen's motion to dismiss under Rule 12(b)(3) and alternate motion to transfer venue under section 1406(a) are not on point. Whether Whalen "resides" in North Carolina is simply irrelevant for venue purposes in an action removed from state court. Instead, section 1441(a) provides that venue is proper so long as the case is removed to the federal district embracing the forum in which the action was pending. IHFC's filing of this action in Guilford County Superior Court renders venue proper in this court under section 1441(a). Consequently, Whalen's motion to dismiss and, alternatively, to transfer for improper venue will be denied on this basis.

### C.    Personal Jurisdiction

Nevertheless, the parties have made what amounts to a jurisdictional argument in their venue dispute, and the Magistrate Judge based his ruling against Whalen on personal jurisdiction grounds. Mindful that the Federal Rules of Civil Procedure should not be interpreted in an overly technical manner, see Foman v. Davis, 371 U.S. 178, 181-82 (1962) (explaining that it is "contrary to the spirit" of the Rules for a decision on the merits to be avoided on the basis of "mere technicalities"), one could say that the "precise title of the movant's objection should not prevent the district court from

_____

however, are not implicated in the case presently before the court because no motion to dismiss for lack of jurisdiction has been filed.

considering and deciding [what amounts to a] personal jurisdiction motion according to its substance rather than the basis of its designation." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351, at 268-69 (3d ed. 2004); see also Larson v. Port of New York Auth., 17 F.R.D. 298, 300 (S.D.N.Y. 1955).[6] There is some basis, therefore, for considering Whalen's motion to dismiss for improper venue to be in substance a motion to dismiss for lack of personal jurisdiction. Indeed, the parties briefs are devoted to such an argument, although Whalen has never invoked Rule 12(b)(2) expressly. Yet even if the court considers Whalen's motion as one contesting personal jurisdiction, as the Magistrate Judge implicitly did, it appears that the Magistrate Judge's conclusion that IHFC demonstrated a prima facie showing of specific personal jurisdiction over Whalen was correct.

### 1. Personal Jurisdiction Standard

The standard for deciding a motion to dismiss for lack of personal jurisdiction is the same as that for a motion to dismiss for a lack of venue. See Gulf Ins. Co. v. Glasbrenner,

---

[6] The general rule is that where a party moves to dismiss based on improper venue alone, the party waives any personal jurisdiction defense that it may have. See Myers v. Am. Dental Ass'n, 695 F.2d 716, 721 (3d Cir. 1982). Indeed, even where arguments of personal jurisdiction and venue are interrelated, such as in an action under the Copyright laws, merely raising venue is insufficient to contest personal jurisdiction. Gen. Design Sign Co. v. Am. Gen. Design, Inc., No. 3:02-CV-2298-H, 2003 WL 251931, at *1 (N.D. Tex. Jan. 31, 2003). Since Whalen did not contest personal jurisdiction in its motion to dismiss, this rule provides a further basis for denying the motion.

417 F.3d 353, 355 (2d Cir. 2005).   The burden is on the plaintiff to establish jurisdiction and venue in the judicial district where the action is brought.   Bartholomew v. Va. Chiropractors Ass'n, Inc., 612 F.2d 812, 816 (4th Cir. 1979), overruled on other grounds by Union Labor Life Ins. Co. v. N.Y. State Chiropractic Ass'n, 458 U.S. 119 (1982).   Although the plaintiff must ultimately demonstrate personal jurisdiction by a preponderance of the evidence either at trial or in a pretrial evidentiary hearing, New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005), when no evidentiary hearing is held, the plaintiff may satisfy its burden simply by making a prima facie showing of personal jurisdiction, Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009).   In assessing whether a plaintiff has made the requisite prima facie showing, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor.   Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).   And as with a motion to dismiss for lack of venue, see CoStar Realty Info., Inc. v. Field, 612 F. Supp. 2d 660, 672 (D. Md. 2009), a court may consider matters outside the pleadings when assessing a motion to dismiss for lack of personal jurisdiction, although the court must continue to draw all reasonable inferences in the light most favorable to the

17

plaintiff, <u>Rich Food Servs., Inc. v. Rich Plan Corp.</u>, No. 5:99-CV-677-BR, 2001 WL 36210598, at \*9 & n.2 (E.D.N.C. May 12, 2001).

In order for the exercise of personal jurisdiction to be proper, two conditions must be satisfied. First, the forum state's long-arm statute must authorize the exercise of jurisdiction. <u>Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001). Second, the exercise of personal jurisdiction must comply with the Due Process Clause of the United States Constitution. <u>Id.</u>

North Carolina's long-arm statute provides, among other things, for the exercise of personal jurisdiction over any validly served defendant who is "engaged in substantial activity within" the state. N.C. Gen. Stat. § 1-75.4(1)(d) (2011). In addition, section 1-75.4(6) permits the exercise of personal jurisdiction over any promise to "use, rent, own, control, or possess . . . real property situated in th[e] State." <u>Id.</u> § 1-75.4(6)(a). Because North Carolina's long-arm statute is intended to assert personal jurisdiction to the full extent permitted by the Due Process Clause, the state's courts have recognized that the question of statutory authority "'collapses into one inquiry – whether defendant has the minimum contacts necessary to meet the requirements of due process.'" <u>Cambridge Homes of N.C., LP v. Hyundai Constr., Inc.</u>, 194 N.C. App. 407,

18

412, 670 S.E.2d 290, 295 (2008) (quoting <u>Filmar Racing, Inc. v.</u> <u>Stewart</u>, 141 N.C. App. 668, 671, 541 S.E.2d 733, 736 (2001)); <u>see also</u> <u>Dillon v. Numismatic Funding Corp.</u>, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977) ("By the enactment of G.S. 1-75.4(1)(d), it is apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."). More recently, however, the North Carolina Supreme Court has emphasized that the two-step process is, in fact, a two-step process, and that jurisdiction under North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, must first be determined. <u>Brown v. Ellis</u>, 363 N.C. 360, 363, 678 S.E.2d 222, 223 (2009) (per curiam).

The Due Process Clause, meanwhile, requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The "minimum contacts" necessary to establish personal jurisdiction vary depending on whether the asserted jurisdiction is general or specific. General jurisdiction occurs when, even though the lawsuit is unrelated to a defendant's contacts with the forum state, there is a showing that the defendant's contacts are "continuous and

19

systematic." <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-15 & n.9 (1984). Specific jurisdiction occurs when a controversy "arises out of" a defendant's contacts with the forum state, <u>id.</u> at 414 & n.8, and "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." <u>CFA Inst. v. Inst. of Chartered Fin. Analysts of India</u>, 551 F.3d 285, 292 n.15 (4th Cir. 2009). The principal inquiry is "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, ___ U.S. ___, ___, 131 S. Ct. 2846, 2854 (2011) (alteration in original) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)). Thus, to establish the exercise of specific jurisdiction, the court must determine: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" <u>ALS Scan, Inc. v. Digital Servs. Consultants, Inc.</u>, 293 F.3d 707, 712 (4th Cir. 2002). Each prong must be satisfied. <u>See</u> <u>Consulting Eng'rs</u>, 561 F.3d at 278-79.

## 2.   Parties' Contentions

Whalen objects to the exercise of personal jurisdiction over it on two grounds.  First, it argues that the Magistrate Judge erred by failing to apply California law to interpret the Purchase Agreement which, according to Whalen, requires the court to determine the contracting parties' intentions apart from the mere text of a contract, even if the contract is fully integrated.  Arguing that the Purchase Agreement is ambiguous as to whether the Lease was included as a purchased asset, Whalen offers the declarations of Ken Whalen and Paul Coscarelli – two of the Purchase Agreement's signatories – both of whom state that neither Whalen nor APA intended the Lease to be so included.  With no other relevant contacts with North Carolina, Whalen argues, the Magistrate Judge had no authority to exercise specific personal jurisdiction over it.

In addition, Whalen contends that the Magistrate Judge fundamentally misinterpreted the Purchase Agreement.  Whalen points to several clauses that allegedly demonstrate that it either did not purchase the Lease from APA or that the Purchase Agreement is ambiguous: an excluded liability provision excluding from the transferred assets "any monies owed by [APA] to any third party"; the lack of any provision mentioning the IHFC Lease; a covenant that APA had not entered into a lease "with respect to any of the Purchased Assets, to which [it]

21

ha[d] any present or future financial or other obligations"; and a forum-selection clause establishing exclusive jurisdiction in the state or federal courts of California for any dispute involving the Purchase Agreement. (Doc. 26 at 9-10 (quoting Doc. 13-1).) Whalen contends that these provisions demonstrate that courts in North Carolina cannot exercise personal jurisdiction over it.

IHFC, on the other hand, argues that the Magistrate Judge correctly interpreted the Purchase Agreement as supporting a prima facie showing of personal jurisdiction over Whalen. IHFC points to a provision expressly including as purchased assets "all assets and properties owned, used, or leased" by APA (Doc. 29 at 4 (quoting Doc. 13-1)) and notes that nowhere is the Lease excluded from the Purchase Agreement. IHFC also points out that Whalen's own conduct – its substantial payments for the October 2008 and April 2009 Furniture Markets - provides further support that Whalen purchased the Lease. (Id.) As to Whalen's contentions regarding California law, IHFC argues that all inferences must be drawn in its favor and, thus, any ambiguity in the Purchase Agreement should be resolved in its favor at this stage. For these reasons, IHFC argues, the Magistrate Judge was correct to recommended exercising specific personal jurisdiction over Whalen. Further, IHFC identifies additional contacts between Whalen and North Carolina which, it contends,

would support the exercise of general personal jurisdiction over Whalen.

### 3. Discussion

The court finds, alternatively, that Whalen's motion to dismiss can be denied on the ground that there is specific personal jurisdiction over it.

Although a contract between a North Carolina entity and an out-of-state party will not automatically establish sufficient minimum contacts for personal jurisdiction in the forum state, where a contract creates a "substantial connection" between the out-of-state party and the forum, it can suffice to establish personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985). Where a contract establishes a long-term relationship between the contracting parties, for example, performance under it would create a relationship that is not "random, fortuitous, or attenuated," and a violation of the contract would clearly cause foreseeable injury in the forum state. Id. at 480. In addition, courts evaluating personal jurisdiction have concluded that where a contract is entered into in North Carolina and will be governed by North Carolina law, there is a further basis for North Carolina courts to exercise personal jurisdiction over out-of-state parties to the contract. See Tubular Textile Mach. v. Formosa Dyeing & Finishing, Inc., No. 4:96CV00391, 1997 WL 33150812, at *4

23

(M.D.N.C. Jan 29, 1997); <u>see also</u> <u>Tom Togs, Inc. v. Ben Elias</u>
<u>Indus. Corp.</u>, 318 N.C. 361, 367, 348 S.E.2d 782, 786-87 (1986).

Here, APA's Lease established a five-year relationship with
IHFC. (Doc. 13-1 at 54.) In addition, it was to be performed
entirely in North Carolina and involved APA's use of real
property in North Carolina. Moreover, it specifically provides
that it is to be governed and interpreted under the laws of
North Carolina. (Doc. 13-1 at 60.)[7] Given these facts, it is
foreseeable that any breach of the Lease could create injury in
North Carolina.

Parties to a contract may also consent to personal
jurisdiction in a particular forum. <u>Consulting Eng'rs</u>, 561 F.3d
at 281 n.11 (noting that a valid forum selection clause "may act
as a waiver to objections to personal jurisdiction"). Personal
jurisdiction can be waived, which means that parties to an
agreement may "contract around principles of personal
jurisdiction by consenting to resolve their disputes in
specified tribunals." <u>Bistro of Kan. City, Mo., LLC, v. Kan.</u>
<u>City Live Block 125 Retail, LLC</u>, Civ. A. No. ELH-10-2726, 2011
WL 1063800, at *13 (D. Md. Mar. 18, 2011) (citing <u>Burger King</u>,
471 U.S. at 471 n.14). Similarly, parties may consent to venue
in specified courts in their agreements. <u>Scotland Mem'l Hosp.</u>,

---

[7] As the Magistrate Judge also concluded, it is reasonable to infer
that the contract was signed in North Carolina, given that IHFC's
representative would have affixed his signature in High Point, North
Carolina. (Doc. 24 at 7 n.1.)

Inc. v. Integrated Informatics, Inc., No. Civ. 1:02CV00796, 2003
WL 151852, at *4 (M.D.N.C. Jan. 8, 2003).[8]  Forum selection
clauses are presumed enforceable unless they are "'unreasonable'
under the circumstances." Allen v. Lloyd's of London, 94 F.3d
923, 928 (4th Cir. 1996) (quoting M/S Bremen v. Zapata Off-Shore
Co., 407 U.S. 1, 10 (1972)).[9]

Here, the Lease's forum selection clause (which neither
party has attacked as unreasonable) provides an independent
basis for exercising personal jurisdiction over the parties to
the agreement.  Paragraph 16.0(a) provides that the parties
"submit to the jurisdiction of the courts of North Carolina and
stipulate that Guilford County, North Carolina, is proper venue
for the purpose of all controversies which may arise under this

---

[8]  Cases addressing forum selection clauses draw a distinction between
"mandatory" and "permissive" clauses. See, e.g., Davis Media Grp.,
Inc. v. Best W. Int'l, Inc., 302 F. Supp. 2d 464, 467 (D. Md. 2004).
A mandatory clause specifies a particular state or court with
exclusive jurisdiction over a particular action, while a permissive
clause effectively waives objection to personal jurisdiction or venue.
Scotland Mem'l Hosp., 2003 WL 151852, at *3.  Here, whether the forum
selection clause is permissive or mandatory is inconsequential because
the case was filed in the permitted forum.  Thus, a party subject to
the Lease would either have specifically agreed to jurisdiction in
North Carolina or waived any objection to the exercise of personal
jurisdiction in the state.

[9]  A forum selection clause or choice of law provision may be
unreasonable and unenforceable if: "(1) their formation was induced by
fraud or overreaching; (2) the complaining party will for all
practical purposes be deprived of his day in court because of the
grave inconvenience or unfairness of the selected forum; (3) the
fundamental unfairness of the chosen law may deprive the plaintiff of
a remedy; or (4) their enforcement would contravene a strong public
policy of the forum state." Allen, 94 F.3d at 928 (citations and
internal quotation marks omitted).  No such allegations have been
raised against the Lease's forum selection clause.

25

Lease." (Doc. 13-1 at 60.) That is more than sufficient to subject the parties to the Lease to jurisdiction in a North Carolina court. See, e.g., CoStar Realty, 612 F. Supp. 2d at 667-68 (holding that a forum selection clause in which a defendant consented to the federal or state courts of Maryland was sufficient to establish personal jurisdiction over the defendant).

That the Lease creates a prima facie showing of jurisdiction over APA is significant because, as the Magistrate Judge found, there is evidence before the court that Whalen purchased the Lease. As the Magistrate Judge recognized, the Purchase Agreement between Whalen and APA expressly provides that "Assets" means "all assets and properties owned, used, or leased or subleased by [APA] in connection with the Business (other than the Excluded Assets)." (Doc. 13-1 at 13 (emphasis added).) This is at least prima facie evidence that APA's leased property in the Furniture Center was an asset. "Purchased Assets," meanwhile, are defined as "collectively the Assets." (Id. at 14.) Thus, unless the Lease was specifically listed as an "Excluded Asset," this is evidence that Whalen purchased APA's "Assets" – including the IHFC lease – in the Purchase Agreement.

The Purchase Agreement defines "Excluded Assets" as "all of those assets owned or used by [APA] in connection with the

Business to be specifically excluded from the Assets, as listed or described in Schedule 1(p)." (Id. at 14.) Schedule 1(p), however, lists only one excluded asset: APA's account receivables as of the close of business on August 30, 2008. (Id. at 32.) As a result, IHFC has provided prima facie evidence that its Lease with APA was among the assets Whalen purchased in the Purchase Agreement.

Other evidence supports this reading of the contract. For example, just two and one-half months after signing the Purchase Agreement, Whalen sent a $74,645.58 check from its corporate account to IHFC – the amount APA owed (which was overdue) under the Lease for the October 2008 Furniture Market. (Doc. 18 at 3, 14.) Whalen similarly made a payment of $119,430.41 in November 2008 to cover APA's rent for the April 2009 Furniture Market. (Doc. 18 at 4, 16.) IHFC has provided evidence that in consideration of these payments by Whalen and, thus, assumption of APA's obligations under the Lease, it waived the Lease defaults and consented to its assignment to Whalen. (Doc. 18 at 4.) IHFC has also submitted unchallenged evidence that Whalen occupied the showroom during the Furniture Markets in October 2008 and April 2009. (Doc. 18 at 3-4.) Taken together, this is evidence that Whalen believed its acquisition of APA's assets included the Lease and its obligations – including the duty to pay rent. Though the fact-finder will ultimately have to

27

determine the persuasiveness of IHFC's evidence, this further supports the prima facie showing that Whalen assumed APA's liability under the Lease.[10]

Whalen's counter-argument – that the failure to list the Lease as a purchased asset excludes it from the Purchase

---

[10] This result does not change even if the court considers Whalen's objections to the Loney Affidavit. Whalen's expansive objections (to nearly every paragraph of the Loney Affidavit) are not merited insofar as they relate to the facts central to establishing specific personal jurisdiction over the company. For example, as IHFC'S vice present of leasing, Loney had personal knowledge that his employer had leased property to APA, that APA failed to pay its rent for the October 2008 Furniture Market, and that Whalen ultimately provided two checks to IHFC to cover the rent for the showroom. (Doc. 18 at 2, 3-4). And although Whalen objects to the lack of authentication for the two checks from Whalen to IHFC, the checks, as "commercial paper," are self-authenticating documents under Federal Rule of Evidence 902(9) and require no extrinsic evidence of authenticity. See, e.g., United States v. Pang, 362 F.3d 1187, 1192 (9th Cir. 2004) ("As a negotiable instrument, a check is a species of commercial paper, and therefore self-authenticating."); United States v. Hawkins, 905 F.2d 1489, 1494 (11th Cir. 1990) (indicating that various checks constituted self-authenticating commercial paper under Rule 902(9)). Moreover, Loney's position at IHFC provided him personal knowledge that APA and Whalen vacated the showroom and ceased making rent payments after the April 2009 Furniture Market. (Doc. 18 at 5.) To the extent Whalen objects to Loney's characterizations of the Lease, meanwhile, Whalen has introduced the Lease into evidence, and the court can evaluate its terms. (Doc. 13-1 at 53-61.)

Whalen also attempts to characterize much of Loney's Affidavit as inadmissible hearsay. However, some "courts have held that hearsay may be considered for purposes of determining personal jurisdiction, provided it bears circumstantial indicia of reliability." Bauman v. DaimlerChrysler AG, No. C-04-00194 RMW, 2005 WL 3157472, at *5 (N.D. Cal. Nov. 22, 2005), rev'd on other grounds sub nom. Bauman v. DaimlerChrysler Corp., 644 F.3d 909 (9th Cir. 2011); see also Campbell Pet Co. v. Miale, 542 F.3d 879, 888-89 (Fed. Cir. 2008) (holding that a district court may consider hearsay evidence when determining if a plaintiff has made a prima facie showing that jurisdiction exists). But even if hearsay evidence should not be considered, see United Techs. Corp. v. Mazer, 556 F.3d 1260, 1278 (11th Cir. 2009) (explaining that hearsay statements could not be used to establish jurisdiction unless the statements were subject to a hearsay exception), the statements at the core of demonstrating specific personal jurisdiction over Whalen are admissible as non-hearsay.

28

Agreement – is of no avail at this stage in the litigation. True, Schedule 1(b), which is styled as a list of "Purchased Assets," does not list the Lease, but neither does it purport to be an exclusive list of all assets purchased in the agreement. (Doc. 13-1 at 31.) To the contrary, the Purchase Agreement indicates that "all . . . properties . . . leased . . . by [APA] in connection with the Business" were among the purchased assets. (Doc. 13 at 13-14.) Therefore, on this basis, IHFC has made at least a prima facie showing that Whalen purchased the Lease so that it would be subject to personal jurisdiction in a North Carolina court.

Whalen also notes that the Purchase Agreement specifies that it is to be interpreted under California law (Doc. 13-1 at 26) and argues that principles of California contract interpretation require a court to interpret an integrated agreement in light of the parties' intentions. As Whalen argues, "[w]here the meaning of the words used in a contract is disputed," California law requires a trial court to "provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." See Morey v. Vannucci, 75 Cal. Rptr. 2d 573, 578 (Cal. Ct. App. 1998). The reception of extrinsic evidence is required even where the contract appears to be unambiguous on its face. Id.

29

Whalen argues that the extrinsic evidence in this case – the declarations of Ken Whalen and Paul Coscarelli – establishes that the Lease was not among the assets acquired in the Purchase Agreement. In support of its argument, Whalen points to Ken Whalen's statement that the Purchase Agreement "excluded any liabilities of [APA], including any lease obligations under APA's showroom lease at the Home Furnishings Center, in High Point, North Carolina" (Doc. 13-1 at 2-3) and to Paul Coscarelli's statement that it was his "understanding that the IHFC lease was not included in the asset sale" (Doc. 14 at 2-3).

Whalen's insistence that these statements are dispositive on its motion to dismiss is mistaken. Even construing the Purchase Agreement under California law and considering Whalen's declarations, the court must consider all evidence in a light most favorable to IHFC and draw all inferences in its favor as well. See Carefirst of Md., 334 F.3d at 396. In so doing, it is apparent that IHFC has made a prima facie showing that the Lease is a purchased asset under the Purchase Agreement and that Whalen is therefore liable for APA's payments. See Consulting Eng'rs, 561 F.3d at 276. That is true even though the declarations of Ken Whalen and Paul Coscarelli are unopposed, because their statements are still subject to credibility determinations. See People v. $9,632.50 U.S. Currency, 75 Cal. Rptr. 2d 125, 132 (Cal. Ct. App. 1998) ("A factfinder is

30

entitled to reject even uncontradicted testimony.") A reasonable fact-finder, after all, might well give little credence to the self-serving statements of the Whalen and APA executives in light of the Purchase Agreement's terms. See People v. Jerry Z, 133 Cal. Rptr. 3d 696, 716 (Cal. Ct. App. 2011) ("[S]elf-serving declarations tend to lack trustworthiness, and may be rejected by a court even if they are uncontradicted." (internal citations and quotation marks omitted)). Thus, Whalen's arguments based on California law and the declarations of Ken Whalen and Paul Coscarelli do not require a dismissal for want of personal jurisdiction.

As a final line of defense, Whalen contends that certain provisions of the Purchase Agreement – specifically paragraph 7.i and Schedule 7(p) – demonstrate that the Lease was considered a liability to be paid by APA rather than an asset. (Doc. 13-1 at 6.) This argument, however, makes little sense. For one thing, there is no paragraph 7.i in the Purchase Agreement.[11] (Doc. 13-1 at 21-22.) Schedule 7(p), meanwhile, appears to be a list of U.C.C. liens against APA's goods. (Doc. 13-1 at 21, 34.) That list does include IHFC as a secured party and "[l]eased items" as its collateral, but IHFC's security

---

[11] There is a paragraph 6.i, which requires APA Marketing to deliver to Whalen certain U.C.C. termination statements for liens on APA Marketing's property listed in Schedule 7(p). Yet even assuming Whalen meant to raise paragraph 6.i rather than the non-existent paragraph 7.i, the implications of this paragraph are unclear.

interest in APA's "leased items" does not conclusively demonstrate that the Lease was a liability rather than an asset – particularly in light of the portions of the Purchase Agreement discussed earlier.

Thus, IHFC has made a prima facie showing that Whalen purchased the Lease from APA in the Purchase Agreement, providing sufficient evidence to conclude, on an alternate basis, that the Magistrate Judge's conclusion that the exercise of personal jurisdiction over Whalen is proper.

**D. Transfer of Venue**

In the alternative, Whalen objects to the Magistrate Judge's denial of its motion to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a). Whalen contends that the Magistrate Judge failed to articulate which factors weighed against transferring venue. (Doc. 26 at 13 n.12.) IHFC urges the court to adopt the Magistrate Judge's recommendation to retain the case. (Doc. 29 at 7-8.)

While a Magistrate Judge is ordinarily authorized to issue an order resolving a non-dispositive question such as a motion to transfer venue under section 1404(a), Scheafnocker v. Comm'r, 642 F.3d 428, 433 n.6 (3d Cir. 2011) (per curiam); Brown v. Wells Fargo, N/A, No. 1:11CV686, 2011 WL 5325599, at *1 n.1 (M.D.N.C. Nov. 6, 2011) (Auld, Mag. J.), the Magistrate Judge in this case simply issued a Recommendation that Whalen's motion to

transfer venue be denied (Doc. 24 at 9). As a result, this
court will review Whalen's objections to the Magistrate Judge's
Recommendation de novo. See Red Bull GmbH v. RLED, LLC, 515 F.
Supp. 2d 641, 643 (M.D.N.C. 2007) (reviewing de novo and
adopting a Magistrate Judge's recommendation to deny a transfer
of venue under section 1404(a)).

Section 1404(a) provides that "[f]or the convenience of
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district or
division where it might have been brought." 28 U.S.C.
§ 1404(a). When considering a motion to transfer under section
1404(a), a court should weigh the following discretionary
factors:

> (1) the plaintiff's initial choice of forum; (2) relative
> ease of access to sources of proof; (3) availability of
> compulsory process for attendance of unwilling witnesses;
> (4) possibility of a view of the premises, if
> appropriate; (5) enforceability of the judgment, if one
> is obtained; (6) relative advantage and obstacles to a
> fair trial; (7) other practical problems that make a
> trial easy, expeditious, and inexpensive; (8)
> administrative difficulties of court congestion; (9)
> local interest in having localized controversies settled
> at home; (10) appropriateness of having a trial of a
> diversity case in a forum that is at home with the state
> law that must govern the action; and (11) avoidance of
> unnecessary problems with conflicts of laws.

Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527
(M.D.N.C. 1996) (citation omitted); see also Speed Trac Techs.,
Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 802-03

33

(M.D.N.C. 2008) (same).  "The moving party bears the burden of establishing that transfer to another venue is proper."  <u>AAI Corp. v. Applied Geo Techs., Inc.</u>, Civ. No. JKB-11-608, 2011 WL 3678903, at *2 (D. Md. Aug. 22, 2011).  Those factors that are relevant are addressed below.

### 1.  Plaintiff's Choice of Forum

As a general rule, the plaintiff's choice of forum "'should rarely be disturbed.'"  <u>Mamani v. Bustamante</u>, 547 F. Supp. 2d 465, 469 (D. Md. 2008) (quoting <u>Collins v. Straight Inc.</u>, 748 F.2d 916, 921 (4th Cir. 1984)).  To unseat the plaintiff's choice of forum, the defendant must demonstrate that the balance of the factors weighs "strongly in [its] favor."  <u>Id.</u>  The plaintiff's choice, however, receives less weight if the suit is filed in a foreign forum or the cause of action bears little relation to the chosen forum.  <u>See</u> <u>Speed Trac Techs.</u>, 567 F. Supp. 2d at 803.

IHFC's choice to file suit in North Carolina weighs strongly in favor of retaining jurisdiction.  IHFC expressly chose to file its suit in Guilford County, North Carolina, which is located in this district.  Moreover, neither the choice of forum nor the type of litigation diminishes the weight afforded the plaintiff's choice of venue.  IHFC filed suit in the only forum where it conducts business.  (Doc. 17 at 16; Doc. 18 at 1.)  The cause of action, meanwhile, involves the breach of a

34

North Carolina lease that was to be performed in High Point, North Carolina. Thus, the cause of action bears a significant relationship with this state and favors retaining jurisdiction.

### 2. Ease of Access to Sources of Proof

When considering the ease of access to sources of proof, courts consider the availability of witnesses and other evidence for trial. Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 703-04 (M.D.N.C. 2007). In this case, interpretation of, and performance of the parties under, the Lease will be important in this case, and the evidence pertaining to it, including IHFC's witnesses, is located in North Carolina. Still, what may be the central issue is whether Whalen acquired the Lease and its attendant liabilities in its Purchase Agreement. Resolving that question will require access to the parties to the Purchase Agreement, all of whom apparently live in California or Colorado. On balance, this factor weighs slightly in Whalen's favor.

### 3. Availability of Compulsory Process

"The availability of compulsory process is . . . a strong factor if witness testimony can only be compelled in the desired forum." NanoEntek, Inc. v. Bio-Rad Labs., Inc., Civ. No. 2:11cv427, 2011 WL 6023189, at *6 (E.D. Va. Dec. 2, 2011). Federal Rule of Civil Procedure 45(b)(2) permits a district court to subpoena any witness within 100 miles of the trial,

35

deposition, or hearing. Yet "[m]erely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process." Samsung Electronics Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 719 (E.D. Va. 2005). To carry its burden "the moving party must demonstrate 'whether [its] witness[es] [are] willing to travel to a foreign jurisdiction.'" Id. (quoting Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc., 196 F. Supp. 2d 21, 33 (D.D.C. 2002)).

Here, Whalen represents that "all of the witnesses, including third party accountants, bank personnel, attorneys for [APA], and staff are not amenable to 'compulsory process' to compel them to testify in North Carolina." (Doc. 30 at 9.) In his declaration, Whalen president Ken Whalen also states that he potentially will be required to subpoena a principal of APA, Paul Coscarelli, and the company's president, Al Schwerin. (Doc. 13-1 at 8.) IHFC, on the other hand, contends that many of Whalen's third party witnesses will not be competent to testify concerning the parties' intent when signing the Purchase Agreement. IHFC also notes that transferring the trial to the Southern District of California would essentially transfer the burden to its witnesses.

This factor weighs in favor of transfer, but only marginally. As to its third party witnesses, Whalen has

36

asserted that the witnesses are beyond the compulsory process of this court, but it has not indicated whether those witnesses could be persuaded to attend a trial in North Carolina through other means. See Samsung Electronics, 386 F. Supp. 2d at 719 ("[If] 'appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important.'" (quoting Anderson v. Century Prods. Co., 943 F. Supp. 137, 149 (D.N.H. 1996))). IHFC also rightly points out that it is difficult to see how many of these witnesses, who neither signed the contract nor were privy to the negotiations, will be qualified to testify about the intent of Whalen and APA at the time of the Purchase Agreement. Furthermore, since the date of Ken Whalen's declaration, APA has filed an answer to the complaint in this case without contesting personal jurisdiction (Doc. 22), suggesting that APA's employees can be expected to appear voluntarily. See SMT Shipmanagement & Transp. Ltd. v. Maritima Ordaz C.A., No. 00 Civ. 5789(GEL), 2001 WL 930837, at *8 (S.D.N.Y. Aug. 15, 2001) (explaining that employees of parties can be expected to appear voluntarily in the forum in which a suit is brought), aff'd sub nom. David J. Joseph Co. v. M/V Baltic, 64 F. App'x 259 (2d Cir. 2003) (unpublished); see also In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 325 (D.N.J. 1998) ("[A] court's inability to compel the appearance

of witnesses does not warrant transfer when witnesses are employees of a party and their presence can be obtained by that party." (internal quotation marks omitted)).[12]  Since neither the Southern District of California nor this court will be able to exercise compulsory process over all of the witnesses in this case, this factor provides only weak support for transferring venue.

### 4.  Local Interest

Local courts have an interest in resolving localized controversies at home.  This factor favors retaining venue. Although this case involves litigants from North Carolina and California, the ultimate basis for liability involves a lease governed by North Carolina law and involving real property located in High Point.  See, e.g., La Casa Real Estate & Inv., LLC v. KB Home of S.C., Inc., No. 1:09CV895, 2010 WL 2649867, at *4 (M.D.N.C. Jun. 30, 2010) (transferring venue, in part, on the recognition that an alternate forum had a greater interest in settling the controversy where the contract in dispute was executed in the alternate forum and involved real property in

---

[12]  The court's own research indicates that authority exists for compelling the attendance of party witnesses at trial.  See In re Consol. Parlodel Litig., 22 F. Supp. 2d at 325 (citing cases but "out of an abundance of caution" declining to ground its decision to conditionally transfer venue under section 1404(a) on that basis). Whether or not that is the case, the fact that Whalen and APA can likely compel the attendance of their principals and employees indicates that the potential inability to serve compulsory process weighs in favor of transfer only weakly.

38

that state). Also, although IHFC is a Delaware corporation, its principal place of business is at the location of the semi-annual international furniture market in High Point, North Carolina. Because this case has such local ties to North Carolina, this factor favors retaining jurisdiction.

### 5. Avoidance of Conflicts of Law Problems

Courts also have an interest in avoiding conflicts of law problems. This factor appears to cut both ways. Certainly, Whalen's liability in this case will be affected by how the Purchase Agreement is construed, and Whalen has submitted evidence that it should be construed under the law of California. At the same time, however, ultimate liability for Whalen and APA will depend on construction of the Lease, which was entered into in North Carolina and is to be construed under the law of that state. Thus, this factor is hardly dispositive.

### 6. Additional Factors

Neither Whalen nor IHFC has raised additional factors for the court's consideration. The court's independent review of the record, the likely evidence, and the parties' arguments similarly indicates that the additional factors do not weigh in favor of either party.

### 7. Conclusion

Based on a consideration of the relevant factors, Whalen has not carried its burden of demonstrating that the convenience

39

to the parties and witnesses and the interests of justice strongly favor transfer of this action to the Southern District of California. Therefore, Whalen's objections to the Magistrate Judge's recommendation not to transfer venue will be denied.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that the Order and Recommendation of the United States Magistrate Judge (Doc. 24) is AFFIRMED as to IHFC's motion to strike (Doc. 20) and that Whalen's objections as to its motion to dismiss and/or transfer venue (Doc. 13) are OVERRULED.

IT IS FURTHER ORDERED that Defendant Whalen's Motion to Dismiss for Improper Venue (Doc. 13) is DENIED; Whalen's alternative motion to Transfer for Improper Venue (28 U.S.C. § 1406(a)) (Doc. 13) is DENIED; and Whalen's alternative motion to Transfer for Convenience (28 U.S.C. § 1404(a)) (Doc. 13) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

February 24, 2012